The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 19, 2020

**2020COA44**

**No. 19CA0255, *People v. Weeks* — Criminal Law — Sentencing
— Restitution — Assessment of Restitution**

A division of the court of appeals considers whether a trial

court may order restitution more than ninety-one days after a

defendant's conviction without a finding of good cause or

extenuating circumstances for delaying its ruling, aside from the

prosecution's request for additional time to seek restitution.  Based

on the plain language of section 18-1.3-603, C.R.S. 2019, the

majority holds that courts must order restitution within ninety-one

days or make a sufficient finding of "good cause" or "extenuating

circumstances" to extend the statutory deadline.  The mere fact that

the prosecution sought additional time to request restitution does

not automatically amount to good cause or extenuating

circumstances.

The dissent would affirm, concluding that when a court extends the time for the prosecutor to seek restitution, that extension implicitly constitutes good cause for the trial court to decide the motion outside of the prescribed ninety-one-day period.

COLORADO COURT OF APPEALS      **2020COA44**

Court of Appeals No. 19CA0255
Garfield County District Court No. 17CR75
Honorable James B. Boyd, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Benjamin Weeks,

Defendant-Appellant.

## ORDER VACATED

Division VII
Opinion by JUDGE LIPINSKY
Fox, J., concurs
Berger, J., dissents

Announced March 19, 2020

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robert P. Borquez, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1    Under the Colorado restitution statute, if a district court decides at sentencing to defer its decision regarding the appropriate amount of restitution, "the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time period by which the restitution amount shall be determined." § 18-1.3-603(1)(b), C.R.S. 2019.

¶ 2    Defendant, Benjamin Weeks, appeals the trial court's restitution order, contending that the court erred by ordering restitution more than eleven months after sentencing without good cause for delaying its ruling.  We agree.  We therefore reverse the order and remand for further proceedings.

## I.    Background

¶ 3    A jury found Weeks guilty of two counts of aggravated robbery and two counts of menacing based on his robbery of a gas station/convenience store.

¶ 4    At the sentencing hearing on February 13, 2018, the prosecutor requested that restitution remain open.  The trial court granted the request:

> I will leave restitution open for 91 days. If a motion is filed, any response should be filed within 28 days and any reply within seven. If anyone wants a hearing, the request needs to be made in the pleadings. If no request is made, I'll rule on the pleadings.

¶ 5　　Nine days later, the prosecution filed a motion requesting $524.19 in restitution — $506.54 for the money Weeks stole during the robbery and $17.65 in prejudgment interest. The prosecution asked the court to order the $524.19 as an "interim amount" because it was still investigating additional possible bases for restitution. The prosecution did not request a restitution hearing.

¶ 6　　Twenty-three days later, Weeks filed an objection to the restitution motion. He argued, among other things, that the victim's sole loss was the $506.54 in stolen money and that the court should not hold restitution open indefinitely based on the prosecution's claim that it may learn of additional losses in the future. Weeks also did not request a restitution hearing.

¶ 7　　Nothing happened on the restitution issue for the next seven-and-a-half months. In late October 2018, Weeks filed a motion for a status conference based on the pending restitution motion and a pending motion for return of property.

¶ 8     At a status conference in November 2018, the court set a hearing on the pending motions for December 2018.  At the December 2018 hearing, the prosecution clarified that it was seeking restitution only for the originally requested amount of $524.19.  In response, Weeks argued, among other things, that the trial court no longer had authority to order restitution because the ninety-one-day deadline in section 18-1.3-603(1)(b) had expired.  The court took the matter under advisement.

¶ 9     Following the hearing, Weeks filed a brief presenting further argument on the ninety-one-day deadline issue.

¶ 10    In January 2019, more than eleven months after sentencing, the court issued an order granting the $524.19 in restitution.  In a separate written order, the court explained why it was rejecting Weeks's argument that it no longer had the authority to order restitution based on the ninety-one-day deadline in section 18-1.3-603(1)(b):

> Applying the time frame in the statute requires the consideration of good cause.  There is some tension in the statute about the 91-day time frame.  Subsection (1)(b) of § 18-1.3-603 provides restitution "shall be determined" within 91 days.  However, subsection 2 authorizes the Court to allow the People 91

days to submit information in support of a specific restitution amount. For the Court to lose the ability to fix an amount on the same day the People could file restitution information would deprive a defendant of any opportunity to respond to the information, deprive both parties of any opportunity to request a hearing and deprive the Court of any ability to consider the information beyond the moments between the filing of the information and the end of the day. To address these potential concerns, the Court in this case entered its usual order when allowing the People time to file restitution information. The Court imposed on the People the 91-day deadline imposed by the statute followed by time for a response from the Defendant and a reply by the People with the opportunity to request a hearing. Although the briefing was sooner completed in this case, the Court, at the time of sentencing, authorized more than 91 days to complete the determination of restitution. No objections were made to this procedure.

With respect to good cause for a longer time frame, Defendant is correct the Court has not uttered the term "good cause" to extend the time for restitution beyond 91 days. However, the Court concludes the Court's briefing and hearing procedure created at the time of sentencing necessarily and implicitly established good cause for restitution to be determined beyond the 91-day period.

## II. Standard of Review

¶ 11    The proper interpretation of the restitution statute is a question of law that we review de novo. *People v. Perez*, 2019 COA 62, ¶ 8, ___ P.3d ___, ___. However, the issue of whether good cause exists to extend the ninety-one-day deadline to determine restitution under section 18-1.3-603(1)(b) is reviewed for an abuse of discretion. *See People v. McCann*, 122 P.3d 1085, 1088 (Colo. App. 2005); *People v. Harman*, 97 P.3d 290, 294 (Colo. App. 2004). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law. *People in Interest of D.L.C.*, 2019 COA 135, ¶ 6, ___ P.3d ___, ___.

## III. Analysis

### A. The Time Limit for "Determining" Restitution Under Section 18-1.3-603(1)(b)

¶ 12    The People appear to suggest that the ninety-one-day deadline for "determining" restitution under section 18-1.3-603(1)(b) may refer *not* to a district court's obligation to "determine" the appropriate amount of restitution to *order*, but *instead* to the

prosecution's obligation to "determine" the appropriate amount of restitution to *request.*

¶ 13    We disagree.  Colorado case law indicates that the "determin[ation]" of restitution under section 18-1.3-603(1)(b) refers to the district court's obligation to order a specific amount of restitution within ninety-one days, unless good cause exists to extend that deadline.  *See People v. Belibi,* 2018 CO 24, ¶ 7, 415 P.3d 301, 302 (explaining that section 18-1.3-603(1)(b) requires that "the specific amount of restitution be *set* within ninety-one days") (emphasis added); *Meza v. People,* 2018 CO 23, ¶ 14, 415 P.3d 303, 308 (holding that section 18-1.3-603(1)(b) allows a district court to "reserv[e] until a later date, within ninety-one days, *findings* with regard to other victims or losses of which the prosecution is not yet aware") (emphasis added); *Perez,* ¶¶ 14-15, ___ P.3d at ___ ("If the court reserves the determination of restitution, as it is authorized to do, restitution is to be *fixed* within ninety-one days after the order of conviction, unless good cause is shown for extending that time. . . .  Because restitution was ultimately *awarded* more than ninety-one days after the order of conviction, a showing of good cause was required.") (emphasis

6

added). Further, in *Sanoff v. People*, 187 P.3d 576 (Colo. 2008), the supreme court equated a trial court's jurisdiction "to *set* an amount of restitution" with the court's jurisdiction "to *determine* the amount of restitution." *Id.* at 579 (emphasis added). It is no coincidence that, in discussing the trial court's jurisdiction, the supreme court paraphrased section 18-1.3-603(1)(b)'s reference to "the restitution amount shall be determined."

¶ 14    Adopting the People's interpretation would render section 18-1.3-603(1)(b) superfluous of the language in section 18-1.3-603(2) giving the prosecution ninety-one days to present information in support of its restitution request. (We discuss that provision further below.) Instead, those two statutory provisions refer to distinct obligations. *See Harman*, 97 P.3d at 294 ("[T]he restitution act contains standards both for the late provision of the restitution amount to the court by the prosecutor ('extenuating circumstances'), § 18-1.3-603(2), and for the late determination of the restitution amount ('good cause'), § 18-1.3-603(1)(b). . . . [W]e do not determine whether 'extenuating circumstances' are comparable to 'good cause.' However, a reasonable reading of the statute is that extenuating circumstances affecting the prosecutor's

7

ability to calculate the amount of restitution may be a factor in finding good cause for the late determination."); *see also Perez*, ¶ 16, ___ P.3d at ___ (same).

¶ 15 Thus, reading "determined" in section 18-1.3-603(1)(b) to mean "determined by the prosecuting attorney" would subject prosecutors to conflicting standards for obtaining extensions of time to submit the information supporting the requested amount of restitution. Under section 18-1.3-603(1)(b), the prosecuting attorney would need to show "good cause" to obtain an extension of the "time period by which the restitution amount shall be determined," while under section 18-1.3-603(2), the same prosecutor would need to demonstrate "extenuating circumstances affecting the prosecuting attorney's ability to determine restitution." Although section 18-1.3-603 is unclear, the general assembly surely did not intend to impose two different tests on prosecuting attorneys to obtain the same relief.

¶ 16 We respectfully disagree with the dissent that *People v. Knoeppchen*, 2019 COA 34, ¶ 27, ___ P.3d ___, ___, stands for the proposition that every extension of time for a prosecutor's deadline to present information regarding restitution automatically

8

constitutes good cause to extend the court's deadline to determine restitution. The analysis of section 18-1.3-603(1)(b) in *Knoeppchen* was dicta because the division ultimately determined that the defendant's motion to vacate the restitution order was time barred. *Id.* at ¶ 28, ___ P.3d at ___.

¶ 17    To the extent that the division in *Knoeppchen* said that an order extending a prosecutor's time to seek restitution always constitutes good cause under section 18-1.3-603(1)(b), we respectfully decline to follow the decision. *People v. Smoots*, 2013 COA 152, ¶ 20, 396 P.3d 53, 57 ("We are not obligated to follow the precedent established by another division, even though we give such decisions considerable deference."), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15, ¶ 20, 390 P.3d 816. Such an analysis would do more than merely interpret section 18-1.3-603(1)(b); it would rewrite the statute.

¶ 18    We also part ways with the dissent's assertion that our reasoning is irreconcilable with the line of cases holding that a sentence is illegal when it does not address restitution. If this were correct, then the ninety-one-day deadline in section 18-1.3-603(1)(b) would be meaningless and trial courts would have

no time limit to determine restitution prior to any appeal. *See People v. Turecek*, 2012 COA 59, ¶ 23, 280 P.3d 73, 77 (holding that the court will not interpret the restitution statute to render its deadlines meaningless).

¶ 19 The ninety-one-day deadline does not apply to determinations of restitution following an appeal and remand. *See McCann*, 122 P.3d at 1088 (noting that the trial court may conclude on remand that, upon the pre-appeal deadline for the People's restitution motion, there was no evidence from which the court could conclude that the victim had suffered a pecuniary loss). Our decision does not mean that a trial court would be required to enter a restitution award of zero if this court remanded the case after determining that the trial court had entered an illegal sentence by disregarding restitution. *See People v. Rockne*, 2012 COA 198, ¶ 18, 315 P.3d 172, 177 ("[W]e interpret the restitution statute as applying its [ninety-one] day period of limitation only to efforts to procure an *initial* order of restitution.").

## B. The Tension Between the Ninety-One-Day Deadlines in Subsections (1)(b) and (2) of Section 18-1.3-603

¶ 20 The trial court's written order raised a good question: How can a district court be expected to order restitution within ninety-one days under section 18-1.3-603(1)(b) if the prosecution needs the full ninety-one days under section 18-1.3-603(2) to submit the information supporting its restitution request? Our answer is that if the prosecution needs the full ninety-one days (or more) to complete its request for restitution under section 18-1.3-603(2), that in itself could constitute "good cause" for the trial court to extend its restitution ruling beyond the ninety-one-day deadline under section 18-1.3-603(1)(b).

¶ 21 But a district court's finding of good cause must rest on the specific facts of the case and not merely on the General Assembly's decision to set the same deadline for a district court's determination of the amount of restitution and the prosecuting attorney's presentation of the information supporting its restitution request. "[I]f the language in a statute is clear and unambiguous, we give effect to its plain meaning and look no further." *Cowen v. People*, 2018 CO 96, ¶ 12, 431 P.3d 215, 218.

¶ 22    The practical problem that the trial court identified requires a legislative, and not a judicial, fix.  It is not our role to blue-pencil inartfully drafted sections of the Colorado Revised Statutes.  *See Ray v. People*, 2019 COA 24, ¶ 13, 456 P.3d 54, 57 ("We may not add or subtract words from a statute.").

## C.    Application to this Case

¶ 23    Weeks was sentenced on February 13, 2018.  The prosecution requested its interim amount of restitution just nine days later.  Weeks filed his objection twenty-three days later.  The prosecution did not file a reply brief by the March 24 deadline.  Neither party requested a restitution hearing.  That left the trial court fifty-two days to rule on the filings before the ninety-one-day deadline on May 15, 2018.  Regardless of the briefing schedule the court had previously set, the briefing was complete long before the ninety-one-day deadline.

¶ 24    So the next question is whether "good cause" existed to extend the ninety-one-day deadline under section 18-1.3-603(1)(b).  In its ruling in January 2019, the trial court found good cause based on the "briefing and hearing procedure created at the time of

12

sentencing." The trial court's briefing and hearing procedure

created at the time of sentencing was as follows:

> I will leave restitution open for 91 days. If a
> motion is filed, any response should be filed
> within 28 days and any reply within seven. If
> anyone wants a hearing, the request needs to
> be made in the pleadings. If no request is
> made, I'll rule on the pleadings.

¶ 25    The court's statement that it would "leave restitution open for

91 days" could be construed as referring to the ninety-one-day

deadline to order restitution under section 18-1.3-603(1)(b). But

regardless, assuming (as the trial court later found) that the court's

statement gave the prosecution ninety-one days to file its restitution

motion, the prosecution's motion would have been due by May 15,

2018; Weeks's response would have been due no later than June

12, 2018; and the prosecution's reply would have been due no later

than June 19, 2018.

¶ 26    Significantly, there is no dispute that the trial court possessed

sufficient information to fix the amount of restitution at $524.19

before the deadline set forth in section 18-1.3-603(1)(b). Nor is

there disagreement that the court could have left "restitution open"

13

for less than ninety-one days so that it could have met section 18-1.3-603(1)(b)'s deadline without a finding of "good cause."

¶ 27    After the completion of that briefing schedule on June 19, 2018, more than four months passed until Weeks alerted the court in late October 2018 that it had still not determined restitution. And more than seven months passed from June 19, 2018, until the trial court ordered restitution in January 2019. The trial court's ruling did not explain, and the record does not show, what good cause, if any, existed for that inordinate delay. *See People v. Gillett*, 629 P.2d 613, 618 n.9 (Colo. 1981) ("Good cause generally means a substantial reason amounting in law to a legal excuse for failing to perform an act required by law."). We will not infer the existence of good cause in the absence of such an explanation. *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 77, 371 P.3d 758, 767 (holding that appellate courts may not engage in factfinding).

¶ 28    Thus, we must reverse under the circumstances and the plain language of section 18-1.3-603(1)(b).

¶ 29    In so ruling, we recognize that the prosecution's initial motion for an "interim amount" of restitution left open the possibility that it might later request additional restitution. However, the trial court's

14

decision regarding good cause under section 18-1.3-603(1)(b) was silent on whether the prosecution needed more time to investigate additional bases for restitution. And the prosecution never requested any additional restitution. Under the circumstances, the district court could have ordered the interim amount of restitution within the ninety-one-day period under section 18-1.3-603(1)(b), while specifically reserving its right to order additional restitution beyond the ninety-one-day period if the prosecution made a sufficient showing of "good cause" under section 18-1.3-603(1)(b) or "extenuating circumstances" under section 18-1.3-603(2). *See Meza*, ¶¶ 9-16, 415 P.3d at 306-09 (a district court may order a specific amount of restitution while specifically reserving its right to determine at a later time the final amount of restitution). The court did not do so.

IV. Conclusion

¶ 30 The restitution order is vacated.

JUDGE FOX concurs.

JUDGE BERGER dissents.

15

JUDGE BERGER, dissenting.

¶ 31  I agree with my colleagues that courts are not roving commissions to fix defective statutes. Indeed, I recently authored two decisions for divisions of this court that refused to rewrite statutes to correct perceived legislative errors. *People v. Ramirez*, 2018 COA 129; *Ray v. People*, 2019 COA 24.

¶ 32  In the first, the division rejected the dissent's attempt to rewrite a criminal statute, criminalizing conduct that almost everyone would agree should be criminalized but was not. *Ramirez*, ¶¶ 30–32 ("While the result mandated by the statutory language likely is undesirable to almost everyone, that does not give us a license to improve or rewrite the statute."). A variety of constraints counseled against a judicial rewrite and required us to vacate the conviction.

¶ 33  In the second case, the plain language of a statute required reports of court orders of mental health commitments to be reported to government agencies to prevent those persons from purchasing firearms. *Ray*, ¶ 3. But the statute only authorized reports of mental health commitments that were made by court orders. *Id.* at ¶ 20. The plain language of the statute simply did

16

not encompass reports other than by court order, so the statute had to be applied as written — even though, in all likelihood, the legislature intended otherwise. *Id.* at ¶ 23.

¶ 34     This case is different. The differences convince me that the majority is wrong. I therefore respectfully dissent.

I.     The Restitution Statute Should be Liberally and Reasonably Construed to Accomplish its Legislative Objective

¶ 35     We are tasked with liberally construing the restitution statute to accomplish the legislative objective of compensating crime victims for the losses they suffered. *People v. McCann*, 122 P.3d 1085, 1087 (Colo. App. 2005). Thus, divisions of this court have concluded that the ninety-one-day period is not a jurisdictional bar to entry of a restitution order. *People v. Harman*, 97 P.3d 290, 293 (Colo. App. 2004). District courts have not only "the authority, but the obligation, to order restitution." *People v. Knoeppchen*, 2019 COA 34, ¶ 21.

¶ 36     There is a reasonable way to read the statute to accomplish the legislative objective: when a court extends the time for the prosecutor to seek restitution, that extension implicitly constitutes good cause for the trial court to decide the motion outside of the

17

prescribed ninety-one-day period.  The majority asserts that the trial court did not adequately explain why it delayed entering the order.

¶ 37     *People v. Knoeppchen* demonstrates why a more detailed explanation of good cause is unnecessary.  There, the defendant argued that the district court failed to make a finding of good cause before permitting the prosecution's late request for restitution.  *Id.* at ¶ 22.  A division of this court reasoned that "nothing in the statute explicitly requires the court to make an oral or written finding of good cause; rather, the statute merely requires good cause to be shown."  *Id.* at ¶ 25.  The division also concluded that the good cause showing need not be made at any particular time.[1]  *Id.* at ¶ 26.

¶ 38     As Chief Judge James B. Boyd cogently observed in his order granting restitution in this case, it is senseless to construe this statute to bar restitution when the court delays in entering the

---

[1] So, under *Knoeppchen*, a court may find good cause *even after* the entry of an untimely restitution order.  *People v. Knoeppchen,* 2019 COA 34, ¶ 26.  This analysis opens another, less-drastic disposition for this case — if the majority is concerned with the trial court's good cause finding, then it should remand to the trial court for a better explanation.

18

order in a case like this. If, as here, a trial court grants the prosecutor an additional ninety-one days after the date of sentencing to request restitution, isn't that, at a minimum, good cause for the court to decide the matter *after* the ninety-one-day-period expires? "[W]here the prosecution timely provides information to the court on or just before the ninety-first day, it will usually be impossible for the district court to rule on the restitution request within the same period." *Knoeppchen*, ¶ 22 n.4. Obviously, the court needs time to decide the motion after it is filed and any briefing is completed. This is sufficient good cause for delaying an entry of restitution under the statute.

## II. The Majority's Construction Leads to an Absurd Result

¶ 39 "We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that defeats the legislative intent or leads to an unreasonable or absurd result." *People v. Vinson*, 42 P.3d 86, 87 (Colo. App. 2002).

¶ 40 "Although we must give effect to the statute's plain and ordinary meaning, the General Assembly's intent and purpose must prevail over a literalist interpretation that leads to an absurd

19

result." *People v. Kailey*, 2014 CO 50, ¶ 13 (quoting *Lagae v. Lackner*, 996 P.2d 1281, 1284 (Colo. 2000)). Thus, we may reject interpretations of statutes when "the resultant absurdity is 'so gross as to shock the general moral or common sense.'" *Dep't of Transp. v. City of Idaho Springs*, 192 P.3d 490, 494 (Colo. App. 2008) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)).[2]

¶ 41 Here, the majority's decision leads to an absurd result that the legislature did not intend.

¶ 42 The majority's unwarranted prohibition on an implied finding of good cause to extend the ninety-one-day period is plainly inconsistent with the legislative intent of awarding restitution to crime victims. Nothing in the statute prohibits an implied extension of the time for ruling on the motion. The legislature intended trial judges to decide restitution in a timely fashion; the legislature could not have intended that no restitution would enter if no decision issued in ninety-one days. Simply put, the majority's disposition prevents a crime victim from receiving restitution that is

---

[2] And further, the General Assembly has, by statute, told us that "[i]n enacting a statute, it is presumed that . . . [a] just and reasonable result is intended." § 2-4-201(1)(c), C.R.S. 2019; *see also* § 2-4-203, C.R.S. 2019.

20

not only timely requested by the prosecutor, but also *conceded* by the defendant.[3]

### III. The Majority's Construction is Irreconcilable With This Court's Precedent

¶ 43    The majority's judgment is also irreconcilable with the line of cases from this court that hold that a sentence is illegal when it does not address restitution. *See, e.g.*, *Knoeppchen*, ¶ 18. These cases recognize that "in all cases in which a defendant's criminal conduct has caused pecuniary damages to a victim, the trial court is required to order the defendant to pay restitution and to fix the amount of such restitution as part of the judgment." *McCann*, 122 P.3d at 1087.

¶ 44    These cases remanded to the trial court to address restitution and correct the illegal sentence, often years after sentence is imposed. *People v. Dunlap*, 222 P.3d 364, 368 (Colo. App. 2009) ("[W]e must remand this case to the trial court for the consideration and fixing of restitution under the statute that was applicable at the

---

[3] A reasonable argument can be made that the defendant waived any objection to the entry of the restitution order, but I need not reach the doctrine of waiver given the availability of a patently reasonable construction of the statute that validates the restitution order.

time defendant was originally sentenced."); *People v. Smith*, 121 P.3d 243, 251 (Colo. App. 2005) ("Because defendant's sentence was illegal, the trial court did not violate defendant's right to be free from double jeopardy when it ordered restitution on remand.").

¶ 45    If the majority's analysis were correct, the only possible disposition in those cases would have been to direct the trial court on remand to enter a restitution award of zero.  And even this result is legally suspect because trial courts can only enter "no order for the payment of restitution" when the court makes "a specific finding that no victim of the crime suffered a pecuniary loss." § 18-1.3-603(1)(d), C.R.S. 2019; *McCann*, 122 P.3d at 1087.  Here, it is undisputed that the victim suffered pecuniary loss that was caused by Weeks.

¶ 46    To combat this contradiction with our prior precedent, the majority asserts that "[t]he ninety-one-day deadline does not apply to determinations of restitution following an appeal and remand." *Supra* ¶ 19.  In support of this assertion, the majority cites *People v. Rockne*, 2012 COA 198, but that case merely held that the statutory deadline did not limit the prosecution's ability to seek *additional*

22

restitution after a prior timely award was already entered.  *Id.* at ¶ 18.  *Rockne* does not address the situation like those in *Dunlap* and *Smith*, where an illegal sentence must be corrected because it never included a restitution order.  But more importantly, because the assertion that the ninety-one-day deadline does not apply to determining restitution on remand has no statutory basis, it seemingly runs afoul of the majority's own prohibition against adding words to statutes.  *Supra* ¶ 22.

¶ 47     The result of the majority opinion is this: When a trial court entirely ignores restitution, and the issue is appealed, the error must be corrected on remand without regard to the expiration of the ninety-one-day period.  But when a restitution award is granted on a timely filed request, the award must be vacated when the court does not expressly find good cause to make its ruling after the ninety-one-day period, or when the finding of good cause is cursory.  That makes no sense.

## IV.   The Majority's Decision Will Have Harmful Real-World Consequences

¶ 48     Finally, the majority opinion leaves prosecutors in uncharted waters.  By the plain terms of the statute, prosecutors fulfill their

responsibility to seek restitution by filing a motion either before sentencing or, if information is not readily available, within ninety-one days of sentencing. § 18-1.3-603(2). But no longer. Now, under the majority's approach, prosecutors must hound trial courts to rule on the motion (or to state explicitly why they are not doing so) before the ninety-one-day period expires. Does the majority opinion mean that, after the ninety-one days, prosecutors must timely appeal the implicit denial of their restitution order? Seemingly, yes.

¶ 49 The reality is that many district court judges face crushing caseloads that inevitably delay the entry of orders. This is good enough a reason why we should not be encouraging prosecutors to pepper courts with more motions in the lead up to the ninety-one-day deadline. This is also good enough reason why neither the General Assembly nor the supreme court in its rulemaking capacity has placed fixed time limits for the adjudication of various motions or other matters by trial courts; the majority's inflexible construction of this statute does exactly that.

¶ 50 In the end, if the majority's opinion stands, either because the General Assembly does not promptly fix the statute, or the supreme

court does not intervene, grave harm will be done to crime victims — harm that the restitution statute was explicitly intended to remedy. And although the restitution award in this case is relatively modest, that will not always be the case.

¶ 51    For all these reasons, I would affirm the trial court's order awarding restitution. I respectfully dissent.